HILL *et al. v.* DUCKWORTH.

(Division B. Nov. 25, 1929.)

[124 So. 641. No. 28174.]

H. B. Greaves, of Canton, and J. P. and A. K. Edwards, of Mendenhall, for appellants.

R. C. Russell, of Magee, for appellee.

Argued orally by **H. B. Greaves**, for appellant.

**Ethridge, P. J.**, delivered the opinion of the court.

Duckworth sued the appellants in the circuit court under the statute making one liable for enticing away a laborer, or sharecropper, or other employee, employed for a specified time, against the consent of the employer or landlord where such contract had actually been made, etc.

It was alleged that in the year 1928 Duckworth made a contract with one C. H. Bearden, which was a verbal contract to work certain lands of Duckworth on the sharecrop system, and that Bearden moved upon the leased premises in the year 1928, and that plaintiff furnished him supplies with which to make his crop. It was further alleged that plaintiff furnished him supplies from his own home and products to the amount of two hundred twenty-eight dollars; that, in addition, there was an account made by Duckworth with Williams, the merchant at Magee, for supplies amounting to two hundred twenty-two dollars and fifty-four cents, without any credits entered thereon; and that plaintiff was due the sum of two hundred thirty-nine dollars and ninety-nine cents on the account of 1928. It was further alleged that about October 1, 1928, the plaintiff and Bearden entered into another contract by which said tenant leased said premises for the year 1929, and was to continue said tenancy for the year 1929 under the terms and conditions of said last lease contract; that plaintiff, after making this last contract, furnished the tenant seven dollars and seventy-five cents worth of goods, but that the 1928 contract had not ended at this time.

It was then averred that the defendants, well knowing the above facts, or being informed of such facts and circumstances as would make a reasonable person believe it to be true that said tenant was under a lease contract with plaintiff set about on or about the ———— day of October, 1928, while said tenant was still on said leased premises and under said contract, to and did actually interfere with, entice away, and persuade said tenant to leave and move from said leased premises, and said defendants did actually move said tenant off and from said premises, and that, too, without the knowledge and consent of plaintiff; that defendants knew, or could and should have known, at and before the interfering with the moving of said tenant, that he was under a rent contract with plaintiff, not only for the year 1928, but the year 1929, and, if they did not know, they and each of them were in possession of such information as would make a reasonable person know or believe that said tenant was on and before said date under a rent contract with plaintiff for the unexpired year of 1928 and for the full year of 1929.

It was further alleged that, after the tenant left the premises, plaintiff incurred expenses of one hundred five dollars in searching for Bearden, having employed two men and one car for that purpose at fifteen dollars a day; and also that the plaintiff in person had lost ten days valued at ten dollars a day in looking for other tenants; and that he had failed to lease twenty acres of the land for the year 1929, and that this land was worth four dollars per acre for said year.

Suit was filed on the 7th day of February, 1929, and the cause tried at the March term, 1929, resulting in judgment for the full amount claimed, except the item of damage to land not rented, which was placed at fifty dollars by the jury.

There are many errors assigned in the case, and many of them will require reversal of the case, but we have decided after a careful consideration of all the evidence that the evidence is insufficient to support the verdict and judgment, and it will not be necessary to notice the several specific assignments of error not referring to the whole case.

The plaintiff introduced the tenant, Bearden, as a witness, and Bearden testified that before he was employed by Hill he had abandoned his contract with Duckworth, and had determined not to go back to the premises of Duckworth or into his service, and that he did not tell Hill that he was under contract with Duckworth. It was further shown by the plaintiff's evidence that the crop for 1928 was completed, grown, and gathered prior to the time that Hill employed or contracted with Bearden. It further appeared from plaintiff's evidence that, after the crops were gathered, Duckworth consented for Bearden to work out at public works, as Bearden was without means of living, and already owed Duckworth something over two hundred dollars on the current year's account, after being credited with the proceeds of his interest in the crop, consequently after the 1928 contract which was only for the purpose of making and gathering a crop on shares was completed, there was nothing more to be done by the tenant under that contract. There was no contract with Duckworth by which Bearden was to continue in his service in any other particular, but, as stated, Duckworth consented that he might procure work outside the farm. It is found in the evidence, without dispute, that the contract for 1929 had never been entered upon. In other words, the time for which the plaintiff contracted upon that service had not arrived at the time the tenant abandoned his contract.

The act of 1928 upon which the last-named contract was made, chapter 292, Laws 1928, provides:

"If any person, who knows or has such information as would make a reasonable person believe that a laborer or renter has contracted with another person for a specified time and where such laborer has actually made such contract, shall interfere with, entice away or employ before a breach of his contract such laborer or renter or persuade such laborer or renter to breach his contract, or leave his employer or leased premises without the consent of the employer or landlord under or with whom said laborer had first contracted he . . . shall be liable to the employer or landlord for all advances made by him to said renter or laborer by virtue of his contract with said renter or laborer and all damages which he may have sustained by reason thereof."

The circumstances relied upon by the plaintiff to show that a reasonable person would believe that he was under such contract have no logical or legal tendency to prove that fact. The rule is that, when circumstances are relied upon to prove a fact or set of facts, the circumstances must not only be consistent with the theory sought to be proved, but must be absolutely inconsistent with any reasonable hypothesis to the contrary. The proof here wholly fails to meet this standard, and the proof was positive and undisputed that Bearden did not disclose the fact that he was under contract at the time Hill employed him, nor did Hill have any knowledge of such contract. The statute above quoted by its very terms provided that the enticement of an employee must be *before a breach of his contract*. The contract in the present case had been breached prior to the time of the employment in so far as the 1929 contract was concerned. The 1928 contract was completed and performed. The statute is a penal statute, and must not be enlarged by interpretation or adding to its terms. A person must bring himself within the terms of the statute before he can recover. The statute rightly applied serves

a useful purpose in securing peace and order in the state and the industrial operation or performance of farming and other industrial enterprises of the state. No person has a right, while the contract exists, to interfere with it and cause a breach thereof. If he does so, he is rightly subjected to the penalties imposed by the statute.

The statute must be construed consistently with the Thirteenth Amendment to the Federal Constitution and with section 15 of the Constitution of 1890, which is in identical terms with the Thirteenth Amendment, except the second clause thereof giving Congress power to enforce the amendment. Under these statutes involuntary servitude is prohibited except as a punishment for crime. No statute can be given an interpretation that would legalize involuntary servitude. The Thirteenth Amendment was adopted for the purpose of abolishing slavery and involuntary servitude. The convention which met in 1890 to promulgate the new Constitution for the state recognized that purpose as being established, not only by the Thirteenth Amendment, but as a sound economic proposition, and inserted the provision in the state Constitution, which, of course, was not necessary for that to be done, but it was done for the purpose of approving the amendment to the Federal Constitution. That convention was composed of the wisest, most prudent, and courageous men of the state, and the fruit of their work, the Constitution of 1890 will rank favorably with any similar document in the files of civilization. The convention met as the result of problems arising through a long period of years, that is, from the close of the Civil War to 1890, in dealing with the recently freed race who had been in servitude prior to that time, and who by the reconstruction program of the government after the Civil War had been invested with

political power, and were exercising political rights under corrupt and venal leadership.

The race problem was presented to these thinkers through many years prior to that convention; the result was that without violating any provisions of the Federal Constitution, and without doing violence to any fundamental principle of human rights, they enacted a Constitution that dissipated the clouds of venality and corruption which overhung the South during the reconstruction period, and the sunlight of peace, prosperity, and happiness has blessed the land since that time. Every citizen who registers to vote takes an oath to support the Constitution of the United States, and the Constitution of the state of Mississippi, and so does every officer exercising any public office. If the statute is enforced in accordance with the constitutional principles, it serves a most useful purpose, but, when extended by practice or construction beyond the policies indicated by the Constitution, it cannot be enforced by the courts.

The judgment here rendered, if affirmed, would be in effect to nullify the provisions of the Constitution. Judgment will therefore be reversed, and the cause dismissed.

Reversed and dismissed.